**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, LOCAL 405, AFL–CIO, Plaintiff-Appellant,**

v.

**TENNESSEE DRESSED BEEF COMPANY, Defendant-Appellee.**

**Nos. 19863, 19945.**

United States Court of Appeals, Sixth Circuit.

July 13, 1970.

Cecil D. Branstetter, Nashville, Tenn., for plaintiff-appellant; Carrol D. Kilgore, Nashville, Tenn., on brief.

Hugh C. Howser, Nashville, Tenn., for defendant-appellee; Charles Hampton White, Nashville, Tenn., on brief.

Before PECK and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

The appellant, Amalgamated Meat Cutters Union (hereinafter "the union") brought this action under Section 301(a) of the Labor Management Relations Act (29 U.S.C. § 185) to require the appellee, Tennessee Dressed Beef

Company (hereinafter "the company"), to arbitrate certain grievances in accordance with the collective bargaining agreement between the parties.

Article III of that agreement established a three step grievance procedure for the adjustment of any disputes arising out of the interpretation or application of the agreement. The first step required the aggrieved employee to orally present and discuss the grievance with his foreman. If the grievance was not settled at the first step, the second step called for a written statement, signed by the employee and his shop steward, to be submitted to the plant manager within five days. Grievances unresolved at this second step after five days were to be submitted to binding arbitration as the third step. Article IX of the agreement, relating solely to discharges and union activity, provided that:

> "No employee shall be unjustly discharged during the life of this Agreement. If, in his opinion, he has been, the Union may take his case to arbitration."

On December 10, 1968, the company discharged 38 employees for overstaying a rest break while discussing the lay-off of another employee. Although the record is not completely clear, it appears that the employees and their supervisor engaged in some discussion both before and after the actual discharge, but the employees ultimately were required to leave the company's premises. On December 13, the union requested arbitration of the question of just cause for the discharges relying on Article IX of the agreement. The company declined to submit the question to arbitration, contending, *inter alia*, that the employees had voluntarily quit and that the dispute was not ripe for arbitration in any event since the first two steps of the grievance procedure set forth in Article III had not been followed. On December 16, a written grievance signed by most of the 38 discharged employees was sent to the company. The company apparently treated this as an attempt to comply

with the second step of the Article III grievance procedure (the first step apparently having been the discussions between the employees and their supervisor at the time of the discharge), but it rejected the written complaint as untimely.

The union then filed this action to have the company ordered to join it in submitting the issues arising out of the discharges to arbitration. The District Court denied the union's motion for summary judgment and held that the union was required by the contract to comply with the first two steps of the grievance procedure under Article III before the Court could entertain an application for an order requiring the company to submit the dispute to arbitration. The union appeals from this order in No. 19,863.

After the union had filed its notice of appeal in No. 19,863, it undertook the steps necessary to comply with the first two stages of the Article III grievance procedure, and, upon the parties' failure to settle the dispute, it again petitioned the District Court for an order requiring the company to submit to arbitration. The District Court dismissed the petition, holding that it was without jurisdiction to consider such a petition while an appeal from the prior order was pending in this Court. The union's appeal from this subsequent order of the District Court is No. 19,945.

■■ The issues presented in these combined appeals are quite narrow. The parties do not genuinely dispute that the underlying substantive issue of whether there was just cause for the 38 discharges is ultimately arbitrable. What they vigorously dispute is whether the substantive issue of just cause may be taken directly to arbitration under Article IX or whether it must be taken through the grievance procedure of Article III. The District Court resolved this procedural dispute in favor of the company's contention that the question of just cause must be taken through the three step grievance procedure. However, it has long been settled that where

the substantive issues of a dispute are a proper subject for arbitration, procedural matters arising out of that dispute are for the arbitrator, not the courts, to determine. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557–558, 84 S. Ct. 909, 11 L.Ed.2d 898 (1964); Capitol Airways, Inc. v. Airline Pilots Association, 341 F.2d 288, 290 (6th Cir.), cert. denied, 381 U.S. 913, 85 S.Ct. 1537, 14 L.Ed.2d 434 (1965); Western Automatic Machine Screw Co., Division of Standard Screw Co. v. United Automobile, etc. Workers, 335 F.2d 103, 106 (6th Cir. 1964); Local 748 of International Union of Electrical, Radio and Machine Workers etc. v. Jefferson City Cabinet Co., 314 F.2d 192, 196 (6th Cir. 1963), cert. denied, 377 U.S. 904, 84 S. Ct. 1162, 12 L.Ed.2d 175 (1964).

Accordingly, the judgment of the District Court in No. 19,863 is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

In light of the disposition in case No. 19,863, the appeal in No. 19,945 is dismissed as moot.