AMALGAMATED CLOTHING &
TEXTILE WORKERS UNION,
AFL–CIO, Plaintiff–Appellant,

v.

FACETGLAS, INC., Defendant–Appellee.

No. 87–1697.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1988.

Decided May 5, 1988.

David M. Prouty (Joel Ronald Ax, Amalgamated Clothing and Textile Workers Union, New York City, Davison M. Douglas, Smith, Patterson, Follin, Curtis, James & Harkavy, Raleigh, N.C., on brief), for plaintiff-appellant.

Robert Valois (Margie T. Case, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, N.C., on brief), for defendant-appellee.

Before ERVIN and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

WILKINS, Circuit Judge:

The Amalgamated Clothing and Textile Workers Union appeals from the dismissal of its breach of contract action against Facetglas, Inc. for lack of subject matter jurisdiction. We affirm in part, reverse in part and remand for further proceedings.

I.

In May 1985 the Union won a National Labor Relations Board-supervised election at the Facetglas plant in Rock Hill, South Carolina. When Facetglas closed the Rock Hill plant prior to finalizing a collective-bargaining agreement, the Union and Facetglas bargained over the effects of the plant closing. *See First Nat'l Maintenance Corp. v. NLRB*, 452 U.S. 666, 677–78 n. 15, 101 S.Ct. 2573, 2580 n. 15, 69 L.Ed.2d 318 (1981). In June 1986 they reached an agreement that a private election would be held among the employees at Facetglas' new plant in Chadbourn, North

Carolina [election agreement].[1]

The election agreement provided that Facetglas would "be neutral in the election and let any selection be strictly up to its employees," and would hire employees "without regard to whether or not [they] joined the union or [were] in favor of it." Attached to the election agreement was a collective-bargaining agreement regarding wages and benefits which would be implemented in the event the employees selected the Union as their collective-bargaining representative [wage agreement]. One of its terms provided that employees would not be discharged except for just cause.

An election was held on July 31, 1986 and its outcome was contested. The Union contended that it won the election 15 to 13 while Facetglas maintained that it won the election 17 to 15. The dispute centered on the voting eligibility of four truck drivers from the Rock Hill plant. Because Facetglas concluded that the Union lost the election, it refused to implement the wage agreement.

The Union filed a complaint in district court for breach of contract, asserting jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (West 1978). The Union pled a claim for breach of the election agreement, alleging that Facetglas: (1) breached the neutrality provision of the election agreement by making anti-union statements to employees prior to the election and by involving outside parties who distributed anti-union literature; (2) breached its promise not to discriminate by discharging two employees because of their support of, membership in, and activities on behalf of the Union; and (3) breached the implementation provision by failing to fulfill the wage agreement. The Union also asserted a claim for breach of the wage agreement, alleging that in addition to discharging the two employees without just cause, Facetglas failed to implement the wage schedule and provide other benefits. It sought an order directing Facetglas to implement the wage agreement and reinstate the two discharged employees, an award of damages to all employees for any losses in wages and benefits, and an award of damages to the Union for the costs incurred in the elections and the bargaining negotiations.

Facetglas moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the court lacked subject matter jurisdiction under section 301. The district court dismissed the case, finding: "Although the plaintiff's case is framed as a breach of contract action, the pervasiveness of representation issues deprives this court of jurisdiction." Since the district court based its decision on the complaint alone, our review is limited to determining whether the court's application of the law was correct. *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 n. 4 (4th Cir.1983); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

We find that the district court properly dismissed the claims concerning breach of the wage agreement for lack of subject matter jurisdiction. Resolution of those claims would require a determination of the primarily representational issue of whether the Union was selected as the collective-bargaining representative of the employees. That issue is within the jurisdiction of the National Labor Relations Board. However, it appears that the claims relating to breach of the election agreement do not involve representational issues and are within the jurisdiction of the district court pursuant to section 301.

## II.

Generally, the National Labor Relations Board is vested with jurisdiction over the area of labor management relations. In addition to handling unfair labor practice complaints, 29 U.S.C.A. § 160 (West 1973 & Supp.1987), the Board is responsible for resolving representational issues, including identification of an appropriate collective-bargaining unit and certification of an ex-

---

**1.** Rather than follow normal procedures for a Board-supervised election at Chadbourn, the parties agreed to conduct a private election un-
der conditions set forth in the election agreement.

clusive bargaining agent, 29 U.S.C.A. § 159 (West 1973). The district court is vested with limited jurisdiction pursuant to section 301 of the Labor Management Relations Act which provides in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a).

The jurisdictions of the Board and the court are not mutually exclusive and claims may arise within both jurisdictions. For example, where an activity is arguably both an unfair labor practice and a breach of a collective-bargaining contract, the Board's authority "is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974) (quoting *Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962)). The Board's jurisdiction is also not exclusive over representational issues arising in a breach of contract case: "[A] suit ... in the federal courts, as provided by § 301(a) ... is proper, even though an alternative remedy before the Board is available." *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 268, 84 S.Ct. 401, 407, 11 L.Ed.2d 320 (1964). However, this court has held that jurisdiction under section 301 is precluded if the contractual dispute is "primarily representational." *United Bhd. of Carpenters, Local Union No. 1694 v. W.T. Galliher & Bros.*, 787 F.2d 953, 954 (4th Cir.1986).

Representational issues still lie "largely within the discretion of the Board," and it is "incompatible with the orderly function of the process of judicial review" for a court to render initial determinations of representational issues. *South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs*, 425 U.S. 800, 805, 96

S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (quoting *NLRB v. Metropolitan Life Ins. Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965)). Federal courts must give "due observance [to] the distribution of authority made by Congress as between its power to regulate commerce and the reviewing power which it has conferred upon the courts under Article III of the Constitution." *Id.* 425 U.S. at 806, 96 S.Ct. at 1845 (quoting *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 141, 60 S.Ct. 437, 440, 84 L.Ed. 656 (1940)).

There is a strong policy in favor of using the procedures vested in the Board for representational determinations in order to promote industrial peace and "[t]o fail to apply this policy to section 301 actions would allow an 'end run' around provisions of the NLRA under the guise of contract interpretation." *Local Union 204, Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co.*, 668 F.2d 413, 418–19 (8th Cir.1982) (footnote omitted). " 'Congress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units,' under the guise of interpreting the collective bargaining agreement." *Id.* at 418 (quoting *Local 3–193 Int'l Woodworkers v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1301 (9th Cir.1980)) (footnote omitted).

In *Galliher* this court found inapplicable these "narrowing constructions" of jurisdiction under section 301. As in *Carey*, the Union in *Galliher* sought to compel arbitration of a representational issue under provisions of a collective-bargaining agreement. This court concluded that the dispute was not so "primarily representational" as to preclude section 301 jurisdiction and affirmed the order compelling arbitration. The parties in *Galliher* were not invoking section 301 to circumvent an existing Board disposition of the merits of their representational claims as in *Iowa Electric*, or to deliberately avoid the Board in an attempt to undermine employee self-determination as in *Ketchikan Pulp*. And contrary to the situation in *South Prairie*, the district court in *Galliher* was not usurping the

Board's power in a case already before the Board.

### III.

The Union here seeks relief for alleged breaches of the election agreement and the wage agreement. The district court dismissed the claims for lack of jurisdiction under section 301, concluding that "issues of representation overwhelm[ed] issues of contract interpretation" and that it could not "offer any meaningful relief for the alleged violation of the election agreement without either declaring that the union won the election or ordering that a new election be held." We agree that, viewed as a whole, the complaint appears to raise primarily representational issues. However, on examination of each separate cause of action it appears that the representational issues are severable from the purely contractual issues over which the district court properly had jurisdiction. We remand for further consideration of whether specific claims arising from an alleged breach of the election agreement may be resolved without resolving representational issues.

 We agree that since the wage agreement was conditioned on the results of the election, the court could not "possibly determine whether there has been a violation of the collective bargaining agreement without first deciding whether the union was elected as the employees' bargaining representative." Resolution of the Union's allegation that Facetglas violated the election agreement by failing to implement the wage agreement would necessarily require determination of primarily representational issues, as would the allegations of breaches of the wage agreement. The court would have to determine whether the truck drivers were part of the bargaining unit and whether the Union won the election. Neither party has presented these primarily representational issues to the Board and they cannot avoid the Board under "the guise of contract interpretation." *Iowa Electric*, 668 F.2d at 419.

However, as an agreement between an employer and a labor organization "significant to the maintenance of labor peace between them," the election agreement is a contract enforceable under section 301. *Retail Clerks Int'l Ass'n, Local Union Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28, 82 S.Ct. 541, 548, 7 L.Ed.2d 503 (1962); *see also Dist. 2, Marine Eng'rs Beneficial Ass'n v. Amoco Oil Co.*, 554 F.2d 774 (6th Cir.1977). The Union's complaint alleges violations of the neutrality and nondiscrimination provisions of that agreement which may be resolved without regard to the ultimate outcome of the election.

Further, the Union seeks monetary damages and reinstatement of two employees, not a new election. To the extent that appropriate relief, if any, may be determined without deciding the ultimate outcome of the election, the district court is the proper forum. For while the Board is authorized to remedy unfair labor practices with cease and desist orders and reinstatement of employees with or without back pay, 29 U.S.C.A. § 160(c), it is not empowered to grant the full range of compensatory relief sought by the Union for breach of contract. *Int'l Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 621, 78 S.Ct. 923, 925, 2 L.Ed.2d 1018 (1958).

We affirm the dismissal of the claims regarding implementation and breaches of the wage agreement based on lack of subject matter jurisdiction. However, we reverse the dismissal of the claims for breach of the election agreement and remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**