**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 400, Plaintiff,**

v.

**MARVAL POULTRY CO., et al., Defendants.**

**Civ. A. No. 84–0126–H.**

United States District Court, W.D. Virginia, Harrisonburg Division.

March 9, 1989.

Robert E. Paul, Zwerdling, Paul, Leibig, Kahn & Thompson, P.C., Dianne Rosse, Div. of Spec. Litigation, N.L.R.B., Washington, D.C., for plaintiff.

Michael Ernest Avakian, North Springfield, Va., for Marval Decertification Committee, Juanita P. Knight, Daniel E. Marvin, Jr., JoAnn C. Rosen, Stella Ringgold, Lilly V. Shifflett.

Glenn M. Hodge, Ronald D. Hodges, Wharton, Aldhizer & Weaver, Harrisonburg, Va., James W. Wimberly, Jr., Wimberly, Lawson & Cobb, Atlanta, Ga., for Marval Poultry Co., Inc.

Henry C. Clark, Clark & Bradshaw, P.C., Harrisonburg, Va., for all other defendants.

Jay T. Swett, McGuire, Woods & Battle, Charlottesville, Va., for Clark and Clark & Bradshaw.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes before the court upon the defendants' motion to dismiss the remaining allegations of the plaintiff's amended complaint. For the reasons stated *infra*, these motions are granted.

### I. *Procedural History*

The factual background of this matter is fully set forth in this court's Memorandum Opinion of July 10, 1986. *United Food and Commercial Workers, Local 400 v. Marval Poultry Co.*, No. 84–0126–H, slip. op. at 8 (W.D.Va. July 10, 1986).

This action is based upon the amended complaint of United Food and Commercial Workers, Local 400 ("the Union"), originally brought against defendants Marval Poultry Company, Inc. ("Marval"), Robert Wolfe, Charles Strickler, Donald Simon, the Marval Decertification Committee, Henry C. Clark, Clark & Bradshaw, and five individual Marval employees (Juanita Knight, Danny Marvin, Joann Rosen, Stella Ringgold, and Lillian Shifflett). The amended complaint alleged violations of §§ 301 and 302 of the Labor Management Relations Act ("LMRA", 29 U.S.C. §§ 185 and 186), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO", 18 U.S.C. § 1961 *et seq.*), and tortious interference with the Union's contractual and representational rights. The court dismissed the plaintiff's pendent state claim for tortious interference with contractual relations by its order of June 11, 1985. By its order of July 10, 1986, the court dismissed the plaintiff's § 301 claim.

During the pendency of this action, the Union filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). The Union's complaint to the NLRB alleged that Marval had violated § 8(a)(1) and (5) of the National Labor Relations Act ("NLRA") by refusing and failing to bargain in good faith, by providing assistance and encouragement to the decertification effort, by restraining and coercing employees during the decertification campaign, and by unlawfully withdrawing recognition of the Union as the employee's collective bargaining representative.

The Regional Director for the NLRB issued a formal Complaint and Notice of Hearing pursuant to the Union's allegations in March of 1985. The Complaint alleged that Marval had unlawfully interfered in the decertification campaign, unlawfully withdrawn recognition from the

Union, and unilaterally instituted changes in the employee's terms and conditions of employment. The NLRB Complaint did not, however, include all of the allegations which the Union had made against Marval. The Union consequently appealed to the General Counsel of the NLRB for reconsideration of those allegations which were dismissed by the Regional Director. This court, by its order of July 10, 1986, stayed the plaintiff's remaining § 302 and RICO claims pending the resolution of these NLRB actions.

The Regional Director withdrew the previously issued Complaint by his order of July 22, 1987, stating that he had reconsidered the case and, in light of additional evidence considered subsequent to the issuance of the Complaint, determined that there was insufficient evidence to show that Marval had acted improperly during the decertification campaign or had unlawfully withdrawn recognition of the Union. The Union did not appeal from this order. On September 17, 1987, the General Counsel, after considering the Union's appeal regarding those allegations which the Regional Director had initially found insufficient, denied the Union's appeal. In doing so, the General Counsel stated that she had examined the evidence in its entirety, including that evidence disclosed pursuant to the supplemental investigation, and concluded that the evidence failed to demonstrate that Marval had unlawfully assisted in the decertification campaign.

## II. *§ 302 Claim*

The plaintiff's amended complaint alleges violations of §§ 302(a)(3) and (b)(1) of the Labor Management Relations Act, 29 U.S.C. §§ 186(a)(3) and (b)(1), which provide in relevant part:

Sec. 302.

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

. . . .

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representation of their own choosing;

. . . .

(b)(1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a). . . .

The plaintiff's § 302 claim arises solely from Marval's alleged solicitation and compensation of those employees who assisted in the decertification campaign, and from the decertification committee members' acceptance of this support and compensation, during the period of June 1984 through October 4, 1984. *See* amended complaint, §§ 25 and 26. These same allegations, which, if true, represent obvious examples of § 8 unfair labor practices, were fully set forth in the Complaint and Notice of Hearing originally issued by the NLRB Regional Director. The defendants have moved to dismiss the § 302 claim as a result of those statements made by the NLRB Regional Director and General Counsel indicating that the evidence in this matter does not demonstrate that Marval, its employees, or its counsel acted improperly during the decertification campaign. In response, the plaintiff argues that the NLRB's refusal to pursue an unfair labor practice claim pursuant to § 8 of the National Labor Relations Act has no relevance to the plaintiff's ability to maintain an action under § 302 of the Labor Management Relations Act since both are distinct and separate federal statutes with differing remedies.

### A. *Preemption of § 302*

■ This court has previously held that its jurisdiction over the plaintiff's § 302

claim is not affected by the preemption doctrine set forth in *San Diego Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).[1] *United Food and Commercial Workers, Local 400 v. Marval Poultry Co.,* No. 84–0126–H, slip. op. at 8 (W.D.Va. July 10, 1986). The *Garmon* Court's preemption doctrine was driven by the Court's concern that state regulation of matters within the ambit of the National Labor Relations Act would upset the carefully constructed legislation and resulting administrative machinery created by Congress to govern labor disputes. *See Garmon,* 359 U.S. at 245–47, 79 S.Ct. at 779–81. Section 302, a statute enacted by Congress to provide additional judicial remedies for wrongful conduct among employees and employers, presents none of the federalism concerns which might trigger the preemption doctrine.

### B. *Primary Jurisdiction of NLRB*

■ Even though the court finds that its jurisdiction over the plaintiff's § 302 claim is not preempted *per se,* it must also note the well-settled proposition, fundamental in the field of labor law, that the NLRB enjoys primary jurisdiction over disputes involving unfair labor practices or representational issues. *See, e.g., Garmon,* 359 U.S. at 244–45, 79 S.Ct. at 779–80. The doctrine of primary jurisdiction, unlike that of preemption, stems from the judiciary's deference to an administrative agency's expertise. *See e.g., United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–165, 1 L.Ed.2d 126 (1956); *see also Communications Workers of America v. Beck,* —— U.S. ——, 108 S.Ct. 2641, 2647, 101 L.Ed.2d 634 (1988). The Supreme Court has recently stated that federal courts may resolve unfair labor practice questions that emerge as "collateral issues in suits brought under independent federal remedies," *Beck,* 108 S.Ct. at 2647. Yet, the Court also stressed that "employees may not circumvent the primary jurisdiction of the NLRB" simply by casting statutory claims as violations of such independent federal remedies. *Id.*

■ The plaintiff's § 302 claim is premised upon the same set of facts which generated the NLRB Complaint regarding possible § 8 unfair labor practices during the decertification campaign. As noted *supra,* the Regional Director initially issued a Complaint and Notice of Hearing, then, upon further investigation, withdrew the Complaint after determining that there was insufficient evidence to prove that Marval was involved in the decertification campaign. In addition, the General Counsel, after examining the evidence in its entirety, found that Marval had not unlawfully assisted in the decertification campaign or otherwise engaged in conduct which tainted the petitions.[2]

Moreover, in regard to the payment of solicitors, the General Counsel's letter of September 21, 1987, specifically concluded that there was "an insufficient basis to support a finding that payments to solicitors *were intended to or would influence employees* to sign the decertification petitions" (emphasis added). Of course, payments made in violation of § 302, by the plain language of the statute, must be made for the purpose of influencing employees in the exercise of their rights to organize and bargain collectively through representation of their own choosing. 29 U.S.C. § 186(a)(3). As shown *supra,* the General Counsel's conclusion, reached after a thorough examination of the evidence, indicates that any payments made by Marval's employees or its counsel were not made for the purpose of influencing the

1. In *Garmon,* the Court held that "when an activity is arguably subject to § 7 or § 8 of the Act [National Labor Relations Act, 29 U.S.C. § 157 and 158], the States as well as the federal court, must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U.S. at 245, 79 S.Ct. at 779.

2. The General Counsel's letter of September 21, 1987, provides a detailed factual analysis of the allegations regarding the alleged payments to employees and concludes that "there is no probative evidence that the employer participated in the decision to pay solicitors, contributed any monies to the effort or otherwise engaged in conduct which arguably rendered the attorney's payments an act of agency."

employees' rights to organize and bargain collectively. Thus, if the court chooses to defer to the findings of the General Counsel, the plaintiff's § 302 claim cannot proceed against any of the defendants in this action as the payments do not fall within the ambit of the statute.

 Of course, the court recognizes that a refusal by the NLRB to issue a Complaint does not constitute an adjudication for the purposes of applying the doctrine of *res judicata, Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 78 (4th Cir.1967). However, the court also recognizes that the Regional Director and General Counsel's examination of the Union's allegations of payments to employees during the decertification campaign does, as the Fourth Circuit noted, "highlight the opportunities which have been available to the [Union] to have [its] grievances authoritatively adjudicated." *Id.* at 78–79.

The Fourth Circuit has recently cautioned against allowing employees to accomplish an "end run" around the provisions of the National Labor Relations Act under the guise of contract interpretation pursuant to § 301 of the Labor Management Relations Act.[3] *Amalgamated Clothing and Textile Workers Union v. Facetglas, Inc.,* 845 F.2d 1250, 1252 (4th Cir.1988). The Fourth Circuit also warned against allowing parties to invoke § 301 "to circumvent an existing Board disposition of the merits of their representational claims." *Id.* Although the NLRB's refusal to maintain a complaint against Marval is not an actual "board disposition on the merits," the continued maintenance of the plaintiff's § 302 claim presents the clear danger of an attempted "end run" around

the NLRA under the guise of a bribery allegation pursuant to § 302 of the LMRA.

This danger of circumventing the NLRB's primary jurisdiction is heightened upon consideration of the specific relief which the plaintiff has requested from the court. The primary relief requested is the entry of an order requiring Marval to recognize the plaintiff as the proper collective bargaining agent for its production and maintenance employees. As an initial matter, the court doubts that the provisions of § 302 allow it to award relief of such a purely representational nature. *Id.* More significantly, the court finds that the relief asked for exposes the plaintiff's § 302 claim as an attempt to circumvent the NLRB's primary jurisdiction over representational issues. As noted *supra,* both the Supreme Court and the Fourth Circuit have recently criticized such "disguised" unfair labor practice claims. *Beck,* 108 S.Ct. at 2647, *Amalgamated Clothing and Textile Workers Union v. Facetglas, Inc.,* 845 F.2d at 1252. Under these circumstances, the court must dismiss the plaintiff's § 302 claim.

The court's holding should not be interpreted as a broad prohibition on § 302 claims.[4] Instead, the court simply finds that when the NLRB, pursuant to a § 8 unfair labor practice allegation, thoroughly investigates allegations involving the bribery of employees during a decertification campaign and finds that the evidence does not support a finding of wrongdoing, a court may then properly defer to the judgment of the NLRB and dismiss a § 302 claim based upon the same set of circumstances already examined by the NLRB. The Supreme Court has recently noted that

---

3. Section 301 of the LMRA, like § 302, vests limited jurisdiction over the area of labor management relations in the federal courts. § 301 allows district courts to hear suits brought for a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce. *See* 29 U.S.C. § 185(a).

4. The plaintiff argues that the dismissal of the § 302 claim effectively repeals § 302 because the conduct proscribed by § 302 is almost always subject to §§ 7 or 8 or the National Labor Relations Act. *See Hospital Employees' Local 79*

*v. Mercy–Memorial,* 862 F.2d 606, 608 (6th Cir. 1988). The plaintiff's argument has merit only in the preemption context, yet this court has explicitly rejected the wholesale preemption of § 302 and instead relies on the primary jurisdiction of the NLRB as it defers to the judgment of the NLRB, reached by the General Counsel, examining the propriety of this particular § 302 claim. *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 108 S.Ct. 830, 837, 98 L.Ed.2d 936 (1988).

in cases involving an "actual or arguable violation of § 8 of the National Labor Relations Act, federal courts typically defer to the judgment of the NLRB." *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539, 108 S.Ct. 830, 836, 98 L.Ed.2d 936 (1988). The court finds that such deference to NLRB's judgment is appropriate given the specific facts of this case.

If federal courts were not permitted to defer to the NLRB's judgment under the conditions present in this action, the courts could be improperly used to entertain virtual "collateral attacks" upon the normally unreviewable decision of the NLRB to refuse to issue a Complaint and Notice of Hearing. Such attacks upon the primary jurisdiction of the NLRB are clearly contrary to the "strong policy in favor of using the procedures vested in the Board for representational determinations." *Id.* In deference to this fundamental policy consideration, this court would permit, in a proper case, the § 302 claims to supplement, but not to supplant, the carefully considered provisions and remedies of the NLRA, but this court would not permit the use of the § 302 claim to set the stage for a result which would conflict with the conclusions reached by the NLRB in the exercise of its primary jurisdiction.

## III. *RICO Claim*

For the reasons described *supra,* the *Garmon* preemption doctrine does not affect this court's jurisdiction over the plaintiff's RICO claim since RICO is an independent federal statute enacted by Congress to provide judicial remedies for specified wrongful conduct. In addition, this court has previously held that the NLRB's primary jurisdiction over labor disputes does not prevent this court from hearing the RICO claim. *United Food and Commercial Workers, Local 400 v. Marval Poultry Co.,* No. 84–0126–H, slip. op. at 6 (W.D.Va. June 11, 1985). The court may now turn to the defendants' motions to dismiss the RICO claim for failure to state a claim upon which relief can be granted.

As this court has recently observed in *Selman v. American Sports Underwriters, Inc.,* 697 F.Supp. 225, 231 (W.D.Va. 1988) (J. Michael), a critical and often disputed element in a civil RICO claim is the existence of a "pattern of racketeering activity." 18 U.S.C. § 1962(c). The RICO statute itself defines a "pattern of racketeering activity" simply as "at least two" acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). In *Walk v. Baltimore & Ohio Railroad,* 847 F.2d 1100 (4th Cir.1988), the Fourth Circuit addressed the much-debated question of when a single fraudulent scheme or criminal episode may be interpreted as a "pattern of racketeering activity" pursuant to the RICO statute.

In *Walk,* the Fourth Circuit, after examining the particular fraudulent scheme at issue in the case, concluded that the scheme, limited in scope to the accomplishment of a "single, discrete objective" did not pose a threat sufficient to justify the imposition of RICO's extraordinary penalties. *Id.* at 1105. The court characterized the episode at issue as "allegations of multiple preparatory acts leading up to the infliction of a basic injury" which were "simply not the stuff of which RICO patterns are made." *Id.*

The Fourth Circuit was careful to emphasize that by focusing on the related predicate acts at issue, it was not holding that RICO plaintiffs must show more than one fraudulent scheme or criminal episode in order to establish a pattern of racketeering activity. *Id.* at 1106. The court found such an approach indefensible after the Supreme Court's holding in *Sedima, S.P. R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), as the RICO statute itself contains no requirement of multiple schemes or episodes. *Id.* The Fourth Circuit also stressed that RICO defendants could not avoid liability merely by engaging in a purely semantic exercise of generalizing their illegal objective. *Id.* (citation omitted). Instead, the Fourth Circuit simply held that the objective of the related predicate acts is a factor which must be considered in assessing the criminal dimension or degree of a RICO claim.

If the objective of the criminal activity is "sufficiently limited," as it was in *Walk*, the related predicate acts may not suggest "ongoing criminal activity of sufficient scope and persistence to pose a special threat to social well-being." *Id.*

■ In the instant case, each of the predicate acts which the plaintiff cites to establish the existence of a "pattern of racketeering activity" occurred as a result of the alleged decertification campaign tactics used during the period of June 1984 through October 4, 1984. The plaintiff cites violations of § 302 of the LMRA and of the mail and wire fraud statutes during this four month period as the predicate acts necessary to support the RICO claim. The purpose of the acts alleged was to destroy the representational and contractual relationship existing between Marval and the Union, thereby interfering with the rights of the employees to choose their collective bargaining representative. *See* amended complaint, ¶ 23. Simply put, the objective of the alleged predicate acts was to end the Union's status as the collective bargaining representative.

While the court recognizes the gravity of Marval's alleged illegal objective, it finds that this particular scheme, limited in scope to the accomplishment of a single, discrete objective, namely, forcing out one specific collective bargaining representative, does not pose a sufficient threat of continuing criminal activity to justify the imposition of RICO's extraordinary penalties. *Id.* at 1105. The plaintiff does not suggest that Marval's alleged activity would have continued for a moment longer than was necessary to terminate this particular bargaining representative. If true, the defendants' activity certainly represents a blatant unfair labor practice, precisely of the kind which the NLRA was intended to remedy, and which the plaintiff sought to have remedied by the NLRB. Of course, some unfair labor practices will also satisfy RICO's pattern requirement; for example, those which "contemplate the repeated infliction of independent economic injuries" would certainly satisfy the Fourth Circuit's interpretation of the pattern requirement.

*Id.* at 1106. But such injuries are not present in this action. The injury complained of in this action is, at bottom, one particular union's loss of its representational rights as a result of a four month decertification campaign. After carefully reviewing the predicate acts alleged by the plaintiff, this court must conclude that "such allegations of multiple preparatory acts leading up to the infliction of a single basic injury are simply not the stuff of which RICO patterns are made." *Id.* at 1105.

Because the alleged objective of this defendant was strictly limited to defeating the representational rights of the Union, the court finds that the alleged violations of § 302 of the LMRA and the mail and wire fraud violations do not suggest the type of "ongoing criminal activity" which is of a "sufficient scope and persistence" to pose the type of "special" societal threat which RICO was meant to remedy. *Id.* at 1106. For this reason, the court finds that RICO's pattern requirement has not been satisfied by the allegations of the amended complaint, and therefore the defendants' motions to dismiss the RICO claim is granted.

## IV. *Conclusion:*

Because the court finds that the allegations of the complaint fail to state a claim for which relief can be provided by the RICO statute, and because the court finds that deference to the NLRB's actions is appropriate under the circumstances, the court grants the various defendants' motions to dismiss the remaining § 302 and RICO claims and will remove this matter from the court's docket.

An appropriate order shall this day issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

## ADJUDGED AND ORDERED

as follows:

1. The motion to dismiss plaintiff's Section 302 claim filed by defendants Marval

Poultry Company, Inc., Robert Wolfe, Charles O. Strickler, and Donald F. Simon shall be, and it hereby is, granted.

2. The motion to dismiss plaintiff's Section 302 claim filed by defendants Henry C. Clark and Clark & Bradshaw shall be, and it hereby is, granted.

3. The motion to dismiss plaintiff's RICO claim filed by defendants Marval Poultry Company, Inc., Robert Wolfe, Charles O. Strickler, and Donald F. Simon shall be, and it hereby is, granted.

4. The motion to dismiss plaintiff's RICO claim filed by defendants Henry C. Clark and Clark & Bradshaw shall be, and it hereby is, granted.

5. The motion to stay discovery filed by defendants Marval Poultry Company, Inc., Robert Wolfe, Charles O. Strickler, and Donald F. Simon shall be, and it hereby is, rendered moot.

6. This action shall be, and it hereby is, dismissed with prejudice and stricken from the docket of this court.

The clerk is hereby directed to send a certified copy of this Order, and the accompanying Memorandum Opinion, to all counsel of record.