952 F.2d 395
 142 L.R.R.M. (BNA) 2048
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION NO. 171,
affiliated with International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, AFL-CIO;
Teamsters, Chauffeurs, Warehousemen and Helpers Local Union
No. 22, affiliated with International Brotherhood of
Teamsters, Chauffeurs, Warehousemen and Helpers of America,
AFL-CIO, Plaintiffs-Appellees,
v.
BLUE RIDGE TRANSFER COMPANY, INCORPORATED, Defendant-Appellant.
 No. 91-3014.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 1, 1991.
Decided Dec. 19, 1991.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. (CA-90-89-R), James C. Turk, Chief District Judge.
 Bayard Easter Harris, The Center for Employment Law, Roanoke, Va., for appellant; Jonathan G. Axelrod, Beins, Axelrod, Osborne & Mooney, P.C., Washington, D.C., for appellees.
 On Brief: Doug Henson, The Center for Employment Law, Roanoke, Va., for appellant; John R. Mooney, Beins, Axelrod, Osborne & Mooney, P.C., Washington, D.C., for appellees.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The district court below granted summary judgment to Local Unions Nos. 22 and 171, both affiliated with the International Brotherhood of Teamsters (collectively "the Union"), ordering that a dispute over the seniority status of unreinstated strikers with Blue Ridge Transfer Co., Inc. ("Blue Ridge") should be decided by arbitration. On appeal, Blue Ridge argues that the court lacked subject matter jurisdiction over the case and that the collective bargaining agreement did not require arbitration of the dispute. Agreeing with the Union that the court had jurisdiction and the agreement does in fact require arbitration, we affirm.
 
 I.
 
 2
 The Union struck Blue Ridge after the expiration of the parties' collective bargaining agreement. The strike lasted from May 13 until July 29, 1989, during which time the company hired replacement workers. Following the conclusion of the strike, a new collective bargaining agreement (the "Agreement") was executed between the parties on September 1, 1989.
 
 
 3
 Blue Ridge laid off all local drivers, switchers and warehousemen at the Roanoke and Henry County terminals on December 22, 1989 (the "Christmas layoff"). Blue Ridge had not rehired any of the formerly striking employees for these positions, so only the replacement workers were laid off. About a week later the company recalled the laid off replacement workers. The company did not recall the formerly striking employees, even though they had more seniority than the replacement workers and all of them were on the preferential hire list.
 
 
 4
 The Union contends that the Agreement contains greater protection for former strikers on the preferential recall list than they have under the National Labor Relations Act (NLRA). The Union filed two timely grievances alleging that the company violated Articles 7 and 50 of the Agreement by refusing to recall laid off employees in seniority order (collectively, the "Grievance"). Blue Ridge refused to process the Grievance, arguing that the Agreement did not cover such a situation.
 
 
 5
 On February 9, 1990, the Union brought suit to compel Blue Ridge to arbitrate the Grievance, in addition to another grievance.* The district court then ordered summary judgment on behalf of the Union on October 10, 1990. Blue Ridge moved the district court to amend and reverse the judgment because the court wrongfully characterized the former strikers who were not returned to jobs after the Christmas rehirings as laid off. In an order dated December 28, 1990, the court found this error to be harmless, and Blue Ridge's timely appeal followed.
 
 II.
 
 6
 Blue Ridge first contends that the district court lacked subject matter jurisdiction over the case. The Union brought this action under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, which states, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry ... may be brought in any district court of the United States." 29 U.S.C. § 185(a) (1978).
 
 
 7
 Blue Ridge argues that federal jurisdiction is preempted by Congress's grant of exclusive jurisdiction to the National Labor Relations Board (NLRB) under the LMRA, 29 U.S.C. § 151 et seq., as interpreted by the Supreme Court in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959). However, the Supreme Court has repeatedly held that federal jurisdiction over suits for breach of collective bargaining agreements under Section 301 are not preempted by Garmon. Vaca v. Sipes, 386 U.S. 171, 179-80 (1967); Smith v. Evening News Ass'n., 371 U.S. 195, 201 (1962). Therefore, the district court correctly took jurisdiction over this case.
 
 III.
 
 8
 Blue Ridge next argues that the district court improperly held that the Grievance was arbitrable under the Agreement. Arbitration is the preferred method of resolving a labor dispute, but it can only occur if both parties have agreed to submit the dispute to arbitration. Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960). Whether the parties have agreed to arbitrate is purely a matter for judicial determination, unless the parties have provided otherwise. AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 649 (1986).
 
 
 9
 The merits of the dispute that is to be arbitrated are wholly irrelevant to the court's determination that the dispute should be arbitrated.
 
 
 10
 Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."
 
 
 11
 Id. at 649-50 (quoting Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960)).
 
 
 12
 If a contract contains an arbitrability clause, the court should find arbitrability unless the court can say with " 'positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " Id. at 650 (quoting Warrior & Gulf, 363 U.S. at 582); see also In re District No. 1, Pacific Coast District, 723 F.2d 70, 77 (D.C.Cir.1983) ("positive assurance" requires compelling level of evidence). With a broad arbitration provision, " '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " AT & T Technologies, 475 U.S. at 650 (quoting Warrior & Gulf, 363 U.S. at 584-85).
 
 
 13
 AT & T Technologies leaves courts with a simple inquiry in determining arbitrability: (1) does the dispute come within the arbitrability clause's scope; (2) does the contract expressly exclude the dispute; and (3) does other "forceful evidence" indicate that the parties intended to exclude the dispute from arbitration?
 
 
 14
 First, according to the terms of the collective bargaining agreement, the Grievance clearly falls within the scope of the arbitrability clause. Article 7 and Article 50 of the Agreement are seniority provisions providing that last hired is first fired, and conversely, that employees should be returned to work in seniority order. Under Article 4, Section 2 of the Agreement, arbitration is very broadly called for "[i]n the event of any disagreements, disputes, complaints or grievance concerning any matter arising under this Agreement, concerning any interpretation of this Agreement or concerning any matter not covered by this Agreement." Section 7 provides that "[t]he Arbitrator or Committee shall determine any questions of arbitrability," thus the arbitrator decides if something is substantively arbitrable. The Supreme Court authorized such an arrangement in AT & T Technologies, 475 U.S. at 649. See also Teamsters Local 70 v. Interstate Distrib. Co., 832 F.2d 507, 510 (9th Cir.1987).
 
 
 15
 Blue Ridge puts crucial emphasis on the fact that the district court admitted after its initial decision that the former strikers who did not get their jobs back after the Christmas layoff rehire were not themselves laid off. Blue Ridge's major argument, with other references to the Agreement, is that because these former workers were not laid off, a dispute over them is not covered under the Agreement. However, the mere fact that these workers were not laid off does not put the Christmas layoff dispute outside the Article 4 definition of an arbitrable issue. We hold that the Grievance falls within the Article 4 definition.
 
 
 16
 Second, seniority and order of layoff or recall disputes such as that over the Christmas layoff are not expressly excluded from arbitration in the Agreement. If Blue Ridge wanted to exclude these situations from the reach of the very broad arbitration provisions of the Agreement, it should have contracted in the Agreement to do so. It did not, however, and instead would have the courts read such a limiting provision into the Agreement. We decline the invitation.
 
 
 17
 Third, there is no compelling extrinsic evidence indicating exclusion. The only evidence Blue Ridge offers is a Supplemental Affidavit from its Executive Vice President H.A. Schirmer stating that the parties agreed, during a post-strike negotiation session on August 17, 1990, that the rights of returning strikers to rehiring after the Christmas layoff would be left to the NLRB's determination, rather than to arbitration. The district court correctly held that "the affidavit is insufficient, as a matter of law, to satisfy the burden of proof necessary to exclude the issue from arbitration." Slip Op. at 12. This is true particularly because the Agreement states that the arbitrator is to decide the arbitrability of a dispute.
 
 
 18
 Therefore, under AT & T Technologies, the Christmas layoff dispute is arbitrable. Blue Ridge's remaining arguments fail to convince us that it is not. Blue Ridge erroneously argues that the rights of returning strikers are exclusively governed by the "Laidlaw/Fleetwood doctrine." NLRB v. Fleetwood Trailer Co., 389 U.S. 375 (1967), and The Laidlaw Corp., 171 N.L.R.B. 1366, 1369-70 (1968), enf'd, 414 F.2d 99, 103 (7th Cir.1969), cert. denied, 397 U.S. 920 (1970), jointly hold that if a company has hired permanent replacements during a strike, it must reinstate former strikers from a preferential list only as vacancies arise. However, parties can negotiate greater rights for returning strikers than they are entitled to under law. Machinist v. United Aircraft Corp., 192 N.L.R.B. 382, 387 (1971), modified, 534 F.2d 422 (2d Cir.1975), cert. denied, 429 U.S. 825 (1976), on remand, 247 N.L.R.B. 1042, 1045 (D.C.Conn.1978), enf'd, 661 F.2d 910 (2d Cir.1981). In this case, the arbitrator's job will be to determine whether the parties contracted to give greater legal rights to the former strikers on the preferential recall list than they had under the NLRA. Whether this claim is valid or frivolous is a matter for the arbitrator to decide, not the court. AT & T Technologies, 475 U.S. at 650.
 
 
 19
 Blue Ridge further erroneously argues that because the Union lost in its appeals to the NLRB, it cannot proceed to arbitration. However, the NLRB's inquiry is directed only at the existence of a statutory violation, United Steelworkers v. American Int'l Aluminum Corp., 334 F.2d 147, 152 (5th Cir.1964), cert. denied, 379 U.S. 991 (1965), not to the merits of the Union's claims that they contracted to greater rights than exist under law. The refusal of the NLRB to issue a complaint is not a final decision on the merits and is irrelevant to a party's right to maintain suit under section 301(a). Thomas v. Consolidation Coal Co., 380 F.2d 69, 78 n. 12 (4th Cir.), cert. denied, 389 U.S. 1004 (1967); see also Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc., 845 F.2d 1250, 1252 (4th Cir.1988).
 
 IV.
 
 20
 The district court properly concluded that the Christmas layoff Grievance is arbitrable. Our statement in Stedor Enterprises v. Armtex, Inc. --- F.2d ---- (4th Cir.1991), No. 91-1705 (October 18, 1991), is equally applicable to this case:
 
 
 21
 It is plain here that there was an agreement to arbitrate any disputes and that the district court's determination to that effect was correct. Stedor's appeal thus represents a "not atypical instance of an unworthy effort to escape or delay arbitration." Chatham Shipping [Co. v. Fertex S.S. Corp., 352 F.2d 291, 294 (2d Cir.1965) ]. Through this appeal, Stedor has denied Armtex some part of the benefit of its bargain: a prompt and relatively inexpensive method of dispute resolution.
 
 
 22
 Slip Op. at 11-12. The judgment of the district court to grant summary judgment to the Union and direct the parties to proceed with arbitration on this claim is hereby
 
 
 23
 AFFIRMED.
 
 
 
 *
 The other grievance concerned layoffs at Blue Ridge's Galax terminal. While both parties briefed the issue as to whether the Agreement required arbitration of the Galax events, we were informed by Blue Ridge's counsel only at oral argument that the previously scheduled arbitration on the issue had already been decided, and in favor of Blue Ridge. Blue Ridge moved at argument to dismiss its Galax appeal, and the Union agreed. We therefore consider only the Christmas layoffs