**LOCAL 12934 OF INTERNATIONAL UNION, DISTRICT 50, UNITED MINE WORKERS OF AMERICA, a voluntary unincorporated association, Plaintiff-Appellee,**

v.

**DOW CORNING CORPORATION, a Michigan Corporation, Defendant-Appellant.**

**No. 71–1799.**

United States Court of Appeals, Sixth Circuit.

April 14, 1972.

Darrell W. Foell, Midland, Mich., on brief for defendant-appellant.

Ronald R. Helveston, Detroit, Mich., for plaintiff-appellee; Rothe, Marston, Mazey, Sachs, O'Connell, Nunn & Freid by Theodore Sachs, Detroit, Mich., on brief.

Before McCREE and KENT, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McCREE, Circuit Judge.

This is an appeal from a summary judgment requiring Dow Corning to submit to arbitration nine grievances filed by Local 12934 or by its members.[1] The Union brought suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[2] Article XIV, section 98, of the collective bargaining agreement provides, in pertinent part:

> Arbitration of certain grievances— grievances involving express interpretation and application of the provisions of this agreement which have been processed through the grievance procedure may be submitted to arbitration by the Union as provided below.

In this appeal, Dow Corning essentially urges two contentions: (1) that the arbitration agreement of the parties specifically excluded the grievances from

---

1. Each grievance was stated in a separate count of the complaint. For convenience, we will refer to the grievances as they were numbered in the complaint. In summary, the grievants and their grievances are:

I. Local 12934: violation of Article III, section 13(b) and (d) of the agreement between Dow Corning Corporation and United Mine Workers Local 12934 by changing the "Employer's Pension, Profit-Sharing and supplemental plan."

II. Thomas H. Van Hoose, an employee, on behalf of himself and "persons affected": violations alleged in grievance I.

III. Union bargaining committee: "violations of the parties' collective bargaining agreement relative to improper assignment of work to, and from, the utility man's classification."

IV. Union bargaining committee: performance of work at the Company's Midland Corporate Center in Williams Township which the Union asserts should be performed by bargaining unit personnel.

V. Dennis E. White, an employee: violation of Article V, sections 53, 64 and 65, which concern computation and application of seniority.

VI. Eugene E. Bober, an employee: violation of the collective bargaining provisions concerning seniority determination and application.

VII. Walter F. Lijewski, an employee: violation of the collective bargaining agreement provisions concerning seniority determination and application.

VIII. George E. Rapp, an employee: violation of the collective bargaining agreement provisions concerning seniority determination and application.

IX. Dale M. Richardson, an employee, on behalf of Sam Leitner: "failure to pay Leitner proper wages, pursuant to job evaluation, under Article XI, Section 89 of the parties' collective bargaining contract."

2. 29 U.S.C. § 185(a) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

submission to arbitration because stipulated procedural prerequisites had not been followed; and (2) that the underlying grievances are within the jurisdiction of the NLRB and therefore the court should have stayed its decision to compel arbitration.

The Supreme Court has delineated the role of labor arbitration in federal labor-management relations law. In Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), it said:

> [T]he entire tenor of the history [of section 301] indicates that the agreement to arbitrate grievance disputes was considered as *quid pro quo* of a no-strike agreement. And when in the House the debate narrowed to the question whether § 301 was more than jurisdictional, it became abundantly clear that the purpose of the section was to provide the necessary legal remedies.

*See* Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

The Court has also made clear the considerations to be weighed by courts asked to order arbitration of labor disputes pursuant to a labor agreement:

> The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the

agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed.

> The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. *An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.*

United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352, 4 L. Ed.2d 1409 (1960) (footnote omitted, emphasis supplied).

We need not detail the grounds of these grievances nor their procedural posture to answer appellant's contention either that they were all untimely filed or that procedural steps prerequisite to arbitration were not followed. As we stated in Amalgamated Meat Cutters stated in Amalgamated Meat Cutters and Butcher Workmen of North America, Local 405 v. Tennessee Dressed Beef, 428 F.2d 797, 798–799 (6th Cir. 1970), "it has long been settled that where the substantive issues of a dispute are a proper sub-

ject for arbitration, procedural matters arising out of that dispute are for the arbitrator, not the courts, to determine." (Citations omitted.) We followed the teaching of the Supreme Court that

> Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. *Even under a contrary rule*, a court could deny arbitration only if it could confidently be said not only that a claim was strictly "procedural," and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award. . . . Reservation of "procedural" issues for the courts, would . . . not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.

> . . . . . .

> [*W*]*e think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play.*

John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557–559, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) (emphasis supplied). Appellant asserts that the Second and Fifth Circuits have indicated, in Communications Workers of America v. New York Tel. Co., 327 F.2d 94, 97 (2d Cir. 1964), and in Local Union No. 787, I. U. E. v. Collins Radio Co., 317 F.2d 214 (5th Cir. 1963), that procedural deficiencies may preclude an order to arbitrate a grievance within the subject matter jurisdiction of the arbitrator. However, we observe that those cases concerned specific subject matter exceptions to the agreement to arbitrate and did not turn upon contractual grievance procedures. Also, both cases were decided prior to the Supreme Court's decision in John Wiley & Sons, Inc. v. Livingston, *supra.*

Appellant's contentions about the NLRB's unfair labor practice jurisdiction to resolve the disputes underlying these grievances also require little discussion. The fact that the claimed contract violations may also be unfair labor practices within the exclusive jurisdiction of the Board does not deprive the court of jurisdiction over appellee's § 301 suit. In Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), the plaintiff brought suit in a state court for redress of alleged discrimination against him for participation in protected union activity. He conceded that his allegations, if true, would state an unfair labor practice within the jurisdiction of the Board. The state courts held that they had no jurisdiction to afford relief since the alleged wrong was within the exclusive jurisdiction of the Board. The Supreme Court reversed, stating:

> [T]he alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord. *Id.* at 197–198, 83 S.Ct. at 268.

(Footnotes omitted.) The Court further stated:

> . . . Section 301 has been applied to suits to compel arbitration of such individual grievances as rates of pay, hours of work and wrongful discharge

. . .; to obtain specific enforcement of an arbitrator's award ordering reinstatement and back pay to individual employees . . .; to recover wage increases in a contest over the validity of the collective bargaining contract . . .; and to suits against individual union members for violation of a no-strike clause contained in a collective bargaining agreement. . . .

The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301 has thus not survived.

*Id.* at 199–200, 83 S.Ct. at 270. (Citation omitted.)

■ Appellant further relies upon a January 4, 1971, letter written by the Board's Regional Director. In that letter, he states his intention to issue a complaint in response to charges which correspond to grievances I and II. At the time of argument of this appeal, neither party was aware of any later action by the Regional Director on the pending charges. And it further appears that the Board will refuse to proceed as long as the disputes underlying the unfair labor practice charges are proceeding to arbitration. Collyer Insulated Wire, 192 N.L.R.B. No. 150 (1971). We conclude that it would be inappropriate to withhold enforcement of the arbitration agreement when it appears that the Board has not yet exercised its jurisdiction and may never do so. We need not decide what would have been the effect of the issuance of an unfair labor practice complaint before this suit was brought. Moreover, the Board's refusal to issue complaints in response to charges involving the claims raised in grievances III and IV does not foreclose arbitration of those grievances. *See, e.*

*g.,* International Union of Electrical, Radio & Mach. Workers v. General Electric Co., 332 F.2d 485, 492–493 (2d Cir.), cert. denied, 379 U.S. 928, 85 S.Ct. 324, 13 L.Ed.2d 341 (1964).

Finally, appellant contends that grievance IV concerns a representational dispute which is within the jurisdiction of the Board and which the Board has resolved adversely to appellee. The complaint states that the grievance "protest[s] the defendant's performance of work at its Midland Corporate Center properly assignable to within the contractually recognized bargaining unit." As the Supreme Court stated in Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 272, 84 S.Ct. 401, 409, 11 L.Ed.2d 320 (1964):

However the dispute be considered —whether one involving work assignment or one concerning representation —we see no barrier to use of the arbitration procedure. If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board. If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party.

By allowing the dispute to go to arbitration its fragmentation is avoided to a substantial extent; and those conciliatory measures which Congress deemed vital to "industrial peace" (Textile Workers Union of America v. Lincoln Mills, *supra,* at 455, 77 S.Ct. 917) and which may be dispositive of the entire dispute, are encouraged. The superior authority of the Board may be invoked at any time. Meanwhile the therapy of arbitration is brought to bear in a complicated and troubled area.[3]

3. The Court in Carey v. Westinghouse Corp., 375 U.S. 261, 262–263, 84 S.Ct. 401, 404, 11 L.Ed.2d 320 (1964), summarized the case before it as follows:

The petitioner union (IUE) and respondent employer (Westinghouse) entered into a collective bargaining agree-

ment covering workers at several plants including one where the present dispute occurred. The agreement states that Westinghouse recognizes IUE and its locals as exclusive bargaining representatives for each of those units for which IUE or its locals have been cer-

We observe that the Board has affirmed the Regional Director's decision dismissing the Union's unit clarification petition. It appears that the petition requested that the bargaining unit description be "clarified" (or expanded) to include the Company's hourly rated employees at its Midland Corporate Center in Williams Township in addition to its hourly rated employees in Midland. The record does not include a copy of the Regional Director's decision, but the Board decision affirming the dismissal states that it was a dismissal of the petition as "premature." The grievance which appellee seeks to have arbitrated is based upon the alleged performance of bargaining unit work at the Midland Corporate Center. It seeks an award requiring performance of this work by employees now within the bargaining unit. The Union presumably would withdraw the grievance if the unit were expanded. Accordingly, if the grievance is resolved in favor of the Union, it is unlikely that the petition for unit clarification will be resubmitted to the Board. The issues placed before the Board by the petition for unit clarification are not necessarily the same as those which must be considered by the arbitrator, and we see no inconsistency between the dismissal of the petition and the court's order to arbitrate the grievance.

Appellant has raised no factual questions which would require a hearing by the District Court. Fed.R.Civ.P. 56. Since the court's conclusions of law are correct, we affirm the summary judgment and order directing appellant to submit the grievances to arbitration in accordance with the parties' agreement.

Affirmed.

---

tified by the National Labor Relations Board as the exclusive bargaining representative; and the agreement lists among those units for which IUE has been certified a unit of "all production and maintenance employees" at the plant where the controversy arose, "but excluding all salaried technical . . . employees." The agreement also contains a grievance procedure for the use of arbitration in case of unresolved disputes, including those involving the "interpretation, application or claimed violation" of the agreement.

IUE filed a grievance asserting that certain employees in the engineering laboratory at the plant in question, represented by another union, Federation, which had been certified as the exclusive bargaining representative for a unit of "all salaried, technical" employees, excluding "all production and maintenance" employees, were performing production and maintenance work. Westinghouse refused to arbitrate on the ground that the controversy presented a representation matter for the National Labor Relations Board.