870 F.2d 1085
 130 L.R.R.M. (BNA) 3001, 57 USLW 2595,
111 Lab.Cas. P 11,042
 INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP
BUILDERS, BLACKSMITHS, FORGERS & HELPERS, AFL-CIO; Local
Lodge 852 of the International Brotherhood of Boilermakers,
Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO,
Plaintiffs-Appellants,
v.
OLYMPIC PLATING INDUSTRIES, INC.; Robert Marks,
individually and as President of Local 63 of the Independent
Workers of North America; Richard Ash, individually and as
Secretary-Treasurer of Local 63; Edwin Young, Individually
and as Recording Secretary of Local 63; Geraldine Broucher;
Wilma Hughes; Florence Brinkerhoff; and Jean Eller,
Defendants-Appellees.
 No. 88-3290.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 2, 1988.
Decided March 22, 1989.
 
 Paul S. Lefkowitz, John M. Masters (argued), Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, Ohio, and Thomas H. Marshall, Kansas City, Mo., for Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO and Local Lodge 852 of the Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO, plaintiffs-appellants.
 Todd S. Bundy, Charles A. Morgan, Jr., and Andrew T. Batschner (argued), Amerman, Burt & Jones, Canton, Ohio, for Olympic Plating Industries, Inc., defendant-appellee.
 Lynne P. Fox, Bernard N. Katz, Robert G. Rothstern (argued), Meranze & Fox, Philadelphia, Pa., and William B. Gore, Laybourne, Smith, Gore & Goldsmith, Akron, Ohio, for Robert Marks, Individually and as President of Local 63 of the Independent Workers of North America, Richard Ash, individually and as Secretary-Treasurer of Local 63, Edwin Young, individually and as Recording Secretary of Local 63, Geraldine Broucher, Wilma Hughes, Florence Brinkerhoff, and Jean Eller, defendants-appellees.
 Before KEITH and KRUPANSKY, Circuit Judges, and ZATKOFF, District Judge.*
 KRUPANSKY, Circuit Judge.
 
 
 1
 This is an appeal from the trial court's dismissal of the instant action initiated on October 6, 1987 by plaintiff-appellant, the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers of the AFL-CIO (International) against certain suspended officers of Local Lodge 852, the Olympic Plating Industries, Inc. (Canton, Ohio) lodge of the International, including defendants-appellees Robert Marks (Marks), Richard Ash (Ash), Edwin Young (Young), Geraldine Broucher (Broucher), Wilma Hughes (Hughes), Florence Brinkerhoff (Brinkerhoff), and Jean Eller (Eller) ("appellees"). The action petitioned to enforce a trusteeship imposed by the International upon Local 852 pursuant to the Constitution of the International, and the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. Sec. 462. Count I of the International's complaint requested the court to enjoin the appellees from violating the Constitution of the International. The International asserted that the appellees had, in violation of the Union Constitution, expended, dissipated, and transferred the funds of the Local. In Count II, the International alleged that the individual appellees had breached the Constitution when they rejected the trusteeship, Finally, in Count III, the International demanded an injunction against Olympic Plated Industries (Olympic), the employer, to enjoin it from recognizing Local 63 of the Independent Workers of North America (IWNA) as the authorized representative of Olympic's unionized employees. Thus, the International also sought injunctive relief against Olympic.
 
 
 2
 The International asserted both 29 U.S.C. Sec. 185(a) (Sec. 301(a) of the Labor Management Relations Act of 1947) and 29 U.S.C. Sec. 462 (Title III of the Labor Management Reporting and Disclosure Act [LMRDA], the Landrum-Griffith Act) as jurisdictional predicates underlying the instant lawsuit.[1]
 
 
 3
 While the federal court action was pending, the International also filed unfair labor practice (ULP) charges with the NLRB against IWNA Local 63 and Olympic respectively. On March 2, 1988, after concluding that the pending NLRB unfair labor practice actions would determine which of the two unions would be the authorized exclusive collective bargaining representative of Olympic and because the NLRB complaint was "based upon the same facts and issues of law" as the pending action before the trial court, it granted the appellees' and Olympic's motions to dismiss and deferred to the exclusive jurisdiction of the NLRB. The dismissal was "without prejudice to plaintiffs' filing a motion to reinstate, if appropriate, after the completion of the NLRB proceedings." From this decision, the International Union initiated the instant timely appeal.
 
 
 4
 The instant case had its genesis when Charles W. Jones (Jones), the President of the International, feared that Local 852's officers had become involved with IWNA, that those officers were not serving the International's needs and that they might endanger the assets of Local 852 by transferring them to IWNA.
 
 
 5
 Defendants-appellees charged that the International had "engaged in certain conduct which a substantial number of its local unions perceived as misconduct" and was not serving their needs. On February 26, 1987, 55 of the 70 members (with 15 abstaining) of the bargaining unit voted to disaffiliate the local union from the International. Furthermore, all members in attendance directed Olympic to revoke any and all prior dues checkoffs to the International and authorized the checkoff of dues to Local 63 of the IWNA. Olympic entered into a collective bargaining agreement with IWNA on June 25, 1987.
 
 
 6
 On March 5, 1987, Jones received official notice that the Local had voted to disaffiliate with the International and had voted to affiliate with IWNA. On March 17, 1987, Jones, in an effort to secure the funds and property of Local 852 imposed an emergency trusteeship, pursuant to Section 3 of Article XVIII of the International's Constitution. This trusteeship was ratified by a hearing conducted on April 1, 1987, before the executive council of the International within fifteen days after the creation of the emergency trusteeship, in accordance with its Constitution.
 
 
 7
 After the trusteeship was declared, the International moved to sequester the funds and property of the Local, which according to the Article V, Section 6 of Union's Constitution, belonged to the International. That provision mandated that, after the officers relinquish office and after the establishment of a trusteeship, all books, papers, monies, and other properties of a lodge must be handed over to the trusteeship. See also Article XXV, Section 13 and Article XVIII, Section 2.
 
 
 8
 Despite these provisions, appellees refused to recognize the trusteeship and refused to relinquish the books, records, monies, and other assets of Local 852, which, according to the complaint, were dissipated, expended, and transferred from the Local 852 account.[2]
 
 
 9
 After the Local repudiated the trusteeship, the International initiated the instant lawsuit and also an unfair labor practice complaint against the IWNA and against Olympic. The International's complaint before the Board charged that IWNA had "usurp[ed] the status of the [International] as the lawfully recognized bargaining representatives of" the Olympic employees. Additionally, the International claimed that Olympic had committed an unfair labor practice by refusing to bargain with the International and by substituting the IWNA, in place of the International, as party to the collective bargaining agreement. The Board dismissed the part of the complaint which charged IWNA with committing unfair labor practices. However, it permitted the charges initiated against the employer to endure. The district court decided that the entirety of the instant complaint was preempted to the exclusive jurisdiction of the NLRB and, from that decision, the International appealed.
 
 
 10
 Although the district judge decided that all three counts of the International's complaint in the instant case were preempted by the exclusive jurisdiction of the NLRB, this court holds that the ruling is applicable only to Count III of the complaint.[3]
 
 
 11
 Jurisdiction over Counts I and II of the complaint, however, was invoked pursuant to Sec. 301(a) of the LMRA and the trial court retained continuing jurisdiction to adjudicate the asserted claims that Local 852 breached the International's Constitution. The plain language of Sec. 301(a) provides for federal court jurisdiction for suits over "violation of contracts between ... labor organizations." The Supreme Court has addressed and squarely decided that the federal courts (as opposed to the NLRB) have jurisdiction under Sec. 301 over suits between a local and an international union to enforce the international union constitution. See United Ass'n of Journeymen v. Local 334, 452 U.S. 615, 101 S.Ct. 2546, 2552, 69 L.Ed.2d 280 (1981). The high court specifically stated that enforcement of contracts between labor organizations (between, for example, locals and the international) should be left to the federal courts and not to the NLRB. 101 S.Ct. at 2552-53.
 
 
 12
 Pursuant to the direction of the Supreme Court, the circuit courts have imposed federal jurisdiction under Sec. 301 of the LMRA in suits essentially similar to the one at bar. In a virtually identical fact pattern, the Seventh Circuit has noted that "[t]he enforcement of a trusteeship is therefore a contract remedy which the [international] union can seek under Section 301 [of the LMRA] together with any ancillary relief of an equitable character that may be necessary to make the trusteeship effective." International Bhd. of Boilermakers v. Local Lodge 714, 845 F.2d 687, 691 (7th Cir.1988).
 
 
 13
 In another identical fact pattern, in National Ass'n of Letter Carriers v. Sombrotto, 449 F.2d 915, 918-19 (2d Cir.1971), the Second Circuit decided that the federal courts have jurisdiction, under Sec. 301, over suits by an international union to impose a trusteeship upon a local. As the Second Circuit reasoned, the labor laws clearly contemplate the establishment of trusteeships in certain circumstances. "If locals were permitted to refuse to accept trusteeships and the federal courts have no jurisdiction to assist parent unions, the trusteeship scheme established by Congress would be effectively thwarted.... We would thus see no basis for excluding a suit to impose a trusteeship from the sufficiently broad language of Sec. 301(a) of the LMRA." Id. See also International Union Allied Indus. Workers v. Local Union 589, 693 F.2d 666, 671 (7th Cir.1982) (federal court had jurisdiction under Sec. 301 over international union's suit to enforce union constitution against local union).
 
 
 14
 It is not significant, for purposes of the jurisdictional analysis, that the International may have lacked the authority to impose the trusteeship. It is true that the members of Local 852 voted to disaffiliate from the International before the International impressed its trusteeship upon the Local. However, regardless of the disaffiliation vote, the International retained the right to the assets of the Local[4] and the appellees and the local should not be permitted to dissipate or expropriate those assets. Even if the appellees and the local no longer have any relationship to the International, the International should be authorized to recover its assets through the mechanics of a trusteeship and the federal courts have jurisdiction to enforce such a trusteeship. See Local Lodge 714, 845 F.2d at 693 (enforcing trusteeship imposed by international union even though trusteeship was imposed after local union had voted to disaffiliate); Executive Bd. Local 1302 v. United Bhd. of Carpenters & Joiners, 477 F.2d 612, 613 (2d Cir.1973) (enforcing trusteeship imposed by international after collective bargaining agreement had expired); International Brotherhood of Boilermakers v. Local Lodge D474, 673 F.Supp. 199, 202 (W.D.Tex.1987) (even in absence of a contract, trusteeship can be imposed by international labor organization to preserve status of certified bargaining representative and to prevent destruction of existing bargaining unit).
 
 
 15
 Finally, it is noteworthy that, contrary to the district court's ruling, the NLRB suit did not involve the "same facts and issues of law" as the instant lawsuit. The propriety of the trusteeship and the Union's method of enforcing it turn on an interpretation of the International's Constitution and its relationship with Local 852. By contrast, the NLRB proceeding involves the statutory rights of and the collective bargaining agreement between the union and Olympic. Indeed, the International did not name the individual officers of Local 852 (appellees in the instant action) as defendants in the NLRB action; the only defendants named before the Board were IWNA and Olympic. In short, there is little similarity between the Board proceeding, involving the employer-union relationship and Counts I and II of the instant complaint which involve only the relationship between the International and its local lodge.
 
 
 16
 Accordingly, Counts I and II of the complaint seeking to enforce the trusteeship should not be preempted to the Board's exclusive jurisdiction. However, Count III--the allegation that Olympic breached the collective bargaining agreement by recognizing Local 63 of the IWNA--should be preempted to the Board's jurisdiction. As hereinbefore explained, under Sec. 301, the federal courts may have jurisdiction over suits alleging an employer's breach of contract. However, although Count III of the instant complaint is styled as presenting a "breach of contract" claim, Count III is virtually identical to the pending unfair labor practice charge before the board. Both proceedings involve claims by the International against the employer and both proceedings must decide if the IWNA is the proper bargaining representative of Olympic's employees and, accordingly, if Olympic's recognition of the IWNA and withdrawal of recognition from the International Boilermakers were proper. If Olympic's actions were improper, it would be guilty of both an unfair labor practice (the charge before the Board) and a breach of contract (the claim in the instant suit). Nonetheless, the underlying substance of the two claims is meaningfully indistinguishable.
 
 
 17
 In such cases where the Board's resolution of non-contractual issues could also resolve the controversial breach of contract claims brought under Sec. 301, the federal courts should decline to exercise jurisdiction over the contractual allegations. See Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc., 845 F.2d 1250 (4th Cir.1988) (where NLRB's resolution of representational issues would also resolve contractual issues, court declined to exercise jurisdiction over contractual claim).
 
 
 18
 This outcome is particularly appropriate because the instant NLRB proceeding involves a representation issue, i.e., a determination of which union should represent the Olympic employees. "There is a strong policy in favor of using the procedures vested in the Board for representational determinations in order to promote industrial peace." Id. at 1252. That the International has characterized the instant claim as a Sec. 301 contract claim is of no consequence. "[T]o fail to apply this policy [preemption] to Sec. 301 actions would allow an 'end run' around provisions of the NLRA under the guise of contract interpretation." Id. at 1252 (quoting Local Union 204, Int'l Bhd. of Elec. Workers v. Ia. Elec. Light & Power Co., 668 F.2d 413, 418-19 (8th Cir.1982)). See also Local 682 v. Bussen Quarries, Inc., 849 F.2d 1123, 1125 (8th Cir.1988) (representational issue can be raised only before the NLRB); Communications Workers of Am. v. U.S. West Direct, 847 F.2d 1475, 1479 n. 1 (10th Cir.1988) (if case is "primarily representational," Sec. 301 jurisdiction is precluded); Local 3-193, Int'l Woodworkers of Am. v. Ketchikan Pulp Co., 611 F.2d 1295, 1301 (9th Cir.1980) (representational issues are for the Board and not for the courts).
 
 
 19
 In short, Count III, unlike Counts I and II, is duplicative of the claim before the Board. Moreover, Count III, unlike the trusteeship counts, is not strictly a contract claim, but a representation issue and, accordingly, Count III should be preempted to the Board's exclusive jurisdiction.
 
 
 20
 The decision of the lower court with regard to Counts I and II is REVERSED and those claims are REMANDED to the district court for further consideration not inconsistent with this decision. The decision with regard to Count III is AFFIRMED.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Sec. 301(a) reads as follows:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 Sec. 462 reads as follows:
 Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization. (Pub.L. 86-257, Title III, Sec. 302. Sept. 14, 1959, 73 Stat. 531.)
 This section is also referred to as Sec. 302 of the Landrum-Griffith Act.
 
 
 [2]
 These allegations are taken from the complaint, which for purposes of the instant appeal must be taken as true because the dismissal below was on the pleadings
 
 
 [3]
 Preemption is appropriate as to Count III because both Count III and the complaint against Olympic before the Board involve the same issue: namely, the resolution of which union is the proper bargaining representative of the Olympic employees. This point will be more fully discussed, infra
 
 
 [4]
 See Article V, Section 6 of the International's Constitution