to discern whether the senior employees of the Chemical Plant have contractual rights to the jobs at the Power Plant, we must look to the actual Agreement and its express terms. Specifically, this review involves interpretation of such phrases as "new operating plant," "operational department," and "any other operating plant which may be added during the life of this contract," along with the stated purpose of the Agreement "to provide for the operation of the Calvert City, Kentucky Chemical Plant of Air Products. . . ." This review does not require looking beyond the terms of the Agreement.

   In the instant case, the Union and Air Products have agreed to the terms outlined in the collective bargaining agreement. According to those terms, a matter of contract interpretation is a question for the arbitrator. Therefore, because we have concluded that the dispute is, indeed, a matter of contract interpretation and the claim, on its face, is governed by the collective bargaining agreement, the underlying dispute is properly before an arbitrator. In accordance with the law as outlined above and the courts' limited role with respect to arbitral jurisdiction, this Court must reverse the decision of the District Court and compel arbitration of the underlying grievance between the Union and Air Products. The arbitrator may then decide whether the particular language in the parties' Agreement will support the Union's claim.

### III.  CONCLUSION

   In sum, this Court finds that the District Court erred when it held that the underlying dispute was an issue of representation thus prohibiting arbitration of such claim. In finding the matter is one of contract interpretation and, on its face, is governed by the relevant collective bargaining agreement, and where the dispute is not pending before the NLRB, we **REVERSE** the District Court's decision granting summary judgment in favor of Air Products, and we order arbitration of the Union's grievance.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2002 FED App. 0269P (6th Cir.)
File Name:  02a0269p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

PAPER, ALLIED-INDUSTRIAL, CHEMICAL & ENERGY WORKERS INTERNATIONAL UNION, LOCAL 5-0550, LOCAL 5-727,
          *Plaintiff-Appellant,*

          No. 00-6448

          *v.*

AIR PRODUCTS & CHEMICALS, INC.,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 00-00054—Thomas B. Russell, District Judge.

Argued:  January 30, 2002

Decided and Filed:  August 12, 2002

Before:  GUY and CLAY, Circuit Judges; NUGENT,*
District Judge.

───────────────

*The Honorable Donald C. Nugent, United States District Judge for the Northern District of Ohio, sitting by designation.

―――――――――

**COUNSEL**

**ARGUED:** Herbert Segal, SEGAL, STEWART, CUTLER, LINDSAY, JANES & BERRY, Louisville, Kentucky, for Appellant.  Ian M. Ballard, Jr., MORGAN, LEWIS & BOCKIUS, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Herbert Segal, SEGAL, STEWART, CUTLER, LINDSAY, JANES & BERRY, Louisville, Kentucky, for Appellant.  Ian M. Ballard, Jr., MORGAN, LEWIS & BOCKIUS, Philadelphia, Pennsylvania, Richard S. Cleary, GREENEBAUM, DOLL & McDONALD, Louisville, Kentucky, for Appellee.

―――――――――

**OPINION**

―――――――――

NUGENT, District Judge.  The Plaintiff-Appellant, Paper, Allied-Industrial, Chemical & Energy Workers International Union, Local 5-0550, Local 5-727 (hereinafter "Union"), filed an action in the United States District Court for the Western District of Kentucky, Paducah Division, seeking to compel the Defendant-Appellee to arbitrate a grievance.  The parties filed cross-motions for summary judgment.  The District Court granted summary judgment in favor of Defendant, finding that the issue between the parties was a "representational issue" subject to the exclusive jurisdiction of the National Labor Relations Board ("NLRB").  Plaintiff filed this timely appeal.  For the reasons that follow, we **REVERSE** the decision of the District Court.

## I. BACKGROUND

Defendant-Appellee, Air Products and Chemicals, Inc. ("Air Products"), operates a Chemical Plant in Calvert City, Kentucky.  The company is an employer in an industry affecting commerce within the meaning of 29 U.S.C. §142,

equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.  The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.

*Am. Mfg.*, 363 U.S. at 568, 80 S.Ct. 1343.  Thus, the Supreme Court concluded in *American Manufacturing* that because there was a dispute between the parties as to "the meaning, interpretation and application" of the collective bargaining agreement, namely the seniority provision, arbitration was proper. *Id.* at 569.

In the companion case of *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347 (1960), the Supreme Court, again, emphasized the courts' limited role with respect to arbitrability issues.  Supporting the "congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration," 363 U.S. at 582, 80 S.Ct. 1347, the Court concluded as follows:

The judicial inquiry under [Section 301 of the LMRA] must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance.... An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.

*Id.* at 582-83.  The *Warrior & Gulf* Court further stated that in the absence of any express provisions excluding a particular grievance from arbitration, "we think only the most forceful evidence of a purpose to exclude the claim for arbitration can prevail." *Id.* at 585.

Reviewing the Agreement in its entirety, we conclude that the Union's underlying dispute does, indeed, involve the "interpretation or application of any of the terms or provisions" of the collective bargaining agreement.  In order

agreement." *Raceway Park, Inc. v. Local 47, Serv. Employees Int'l Union*, 167 F.3d 953 (6th Cir.1999) (citing *Am. Mfg.*, 363 U.S. at 567-68, 80 S.Ct. 1343, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 80 S.Ct. 1347 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358 (1960)).

*American Manufacturing* involved a suit by a union to compel arbitration of a grievance which the union filed with the union member's employer. The union claimed that the employer had violated the terms of the seniority provision of the collective bargaining agreement, while the company maintained that it did not. The Supreme Court outlined the role of the judiciary in matters where parties to the lawsuit have, in fact, negotiated a collective bargaining agreement to define their rights. Justice Douglas, writing for a unanimous Court, stated as follows:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.

*Am. Mfg.*, 363 U.S. at 567-68, 80 S.Ct. 1343; *see also Gen. Drivers, Salesmen and Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc.*, 23 F.3d 1039, 1043 (6th Cir.1994). The Court further stated that, along these lines, courts are in no position to decide the matter on its merits:

> Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

The courts, therefore, have no business weighing the merits of the grievance, considering whether there is

§ 185. The Union is a labor organization which represents employees in an industry affecting commerce within the meaning of 29 U.S.C. § 142, § 185. Air Products and the Union are parties to a collective bargaining agreement ("collective bargaining agreement" or "the Agreement"). The Union is the exclusive collective bargaining representative of the employees of Air Products' plant.

Air Products also operates a plant known as the Power Plant. Air Products constructed this Plant adjacent to the Chemical Plant in the Spring of 1999. According to Air Products, the Power Plant is separate and distinct from the Chemical Plant. Air Products contends that its company is divided into two different "operating groups": the Chemicals Group and the Gases and Equipment Group. The Chemicals Group, according to Air Products, consists of various operating departments, including Vinyl Acetate, Acetylenics, Polyvinyl Alcohol, Utilities, Emulsion, Spray Dryer, and "any other operating plant which may be added during the life of" the parties' collective bargaining agreement; and it also operates the Chemical Plant. The Gases and Equipment Group, on the other hand, provides steam and electricity to the Chemical Plant and the Tennessee Valley Authority. In addition, the Gases and Equipment Group markets the Power Plant's steam and electricity to others, within Calvert City and throughout the country. Air Products provides the following facts in support of its contention that the Chemical Plant and the Power Plant are distinct operating plants: (1) they are managed independently; (2) there is no integration; (3) the Gases and Equipment Group is responsible for its own recruiting, hiring, and training of new employees at the Power Plant; (4) the Chemicals Group has no supervisory authority over employees at the Power Plant; (5) there is no interchange of employees between the Plants; and (6) while in close proximity, the Plants are separated by a fence and separate driveways and entrances.

Following the construction of the Power Plant, Union members who were employed at the Chemical Plant

attempted to exercise seniority rights to the new jobs in the Power Plant. Air Products refused their attempts. Thereafter, on October 27, 1999, the Union exercised its rights as outlined in the collective bargaining agreement, and it filed a grievance with Air Products in which it protested Air Products' actions. Article XXV of the Agreement describes the manner in which grievances shall be addressed:

Any grievances of any employee covered by the terms of this Agreement, or any dispute which shall arise between the Union or its members and the Company, with respect to the interpretation or application of any of the terms or provisions of this Agreement shall be determined, during the term of this Agreement, by the procedure set forth by this Article.

J.A. at 56.

The grievance stated as follows:

In order to replace an existing Utilities Plant, in 1999 Air Products and Chemicals, Inc. started construction of a cogeneration unit adjoining the existing Utilities Unit at their Calvert City, Kentucky location....In October 1999, Air Products and Chemicals, Inc. announced the hiring of new non-bargaining unit employees to staff the cogeneration unit and the abolishment of the existing utilities, steam generation unit positions....Air Products and Chemicals, Inc. (Company) is in violation of the current collective Bargaining Agreement between the Company and Paper, Allied-Industrial, Chemical and Energy Workers International Union, Local 5-727 (PACE Union) by refusing to allow unit employees to exercise their seniority rights to the jobs that will be available at the cogeneration unit expected to be in operation in the Spring of the year 2000.

Grievance Report, J.A. at 94. Within the grievance, the Union requested that Air Products "cease and desist from violating the collective bargaining agreement between the

Company may attempt to resolve disputes between the Union or its members and the Company. Article XXV of the Agreement states as follows:

Any grievances of any employee covered by the terms of this Agreement, or any dispute which shall arise between the Union or its members and the Company, with respect to the interpretation or application of any of the terms or provisions of this Agreement shall be determined, during the term of this Agreement, by the procedure set forth by this Article.

J.A. at 56. If the parties are unable to satisfactorily resolve the grievance in accordance with the grievance procedure outlined in the Agreement, Article XXVI provides that the question may be submitted to arbitration. The Agreement expressly states that the arbitrator does not have the power to "add to, or subtract from, or to modify any of the Articles" of the Agreement. J.A. at 60. Therefore, the issue is whether the Union's dispute--the Chemical Plant employees' seniority rights to the jobs at the Power Plant--on its face, is governed by the Agreement, and as such, may be referred to arbitration.

The Supreme Court, in its three decisions decided in 1960 known as the "Steelworkers Trilogy," strongly endorsed the use of arbitration as a means by which disputes arising under collective bargaining agreements may be resolved. In this respect, the Supreme Court also delineated an extremely narrow function of the courts in deciding questions concerning arbitral jurisdiction. Relying on Section 301 of the LMRA, the Supreme Court in *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567-78, 80 S.Ct. 1343 (1960), held that the function of a court with respect to arbitration is limited to the following: (1) assuring that the claim is governed by the contract; (2) ordering parties to arbitration unless the arbitration clause is "not susceptible of an interpretation that covers the asserted dispute"; and (3) refraining from reviewing the merits of an award so long as it "draws its essence from the collective bargaining

case at hand, only the federal court has been presented with the disputed issue. Therefore, pursuant to Section 301, the court has jurisdiction over the Union's dispute.

### 2. Arbitration

Air Products concedes that the parties contracted to arbitrate a grievance when the underlying dispute involves the interpretation or application of the terms and provisions of the collective bargaining agreement. According to Air Products, however, the dispute in this case is an issue of representation--whether the Union's representation should be extended to the new Power Plant--which requires no interpretation of the terms and provisions of the Agreement. Moreover, a determination of whether the within agreement also covers the new Power Plant, according to Air Products, cannot be resolved by arbitration because it requires looking beyond the terms of the Agreement and thus exceeds the powers conferred upon the arbitrator. Air Products contends that the Agreement expressly states that one of the purposes of the Agreement is to "provide for the operation of the . . . Chemical Plant," and thus, the Agreement is limited to operations at the Chemical Plant. Air Products concludes, therefore, that there is no provision extending its terms to any other facility operated by Air Products, and any attempt to do so would violate the collective bargaining agreement.

Air Products' reading of the Agreement, however, is a very narrow one. If we were to view the Agreement as Air Products suggests, we would be forced to ignore other pertinent provisions of the Agreement. This Court is bound by the traditional principles of contract interpretation. *UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1479-80 (6th Cir.1983)(citations omitted). We must, therefore, consider the Agreement as a whole so as to give meaning and effect to all of its provisions. *Id.*

The Agreement at issue outlines a grievance procedure which provides a means by which the Union and the

Company and the Union and agree that current employees under the provisions of the collective bargaining agreement be allowed to exercise their seniority rights to the jobs when the cogeneration unit becomes operative." J.A. at 94.

On November 5, 1999, Air Products denied the Union's grievance. Air Products' position was that the current bargaining unit employees of the Calvert City Chemical Plant have no contractual rights to the jobs at the new cogeneration plant. Air Products stated in its Answer to the grievance that "the new Cogeneration Plant is not part of the Chemical Plant; therefore, its operation and staffing is not covered by the Labor Agreement." *Id.*

The Union then attempted to move the matter to arbitration, as it believed it was entitled to do under Article XXVI of the collective bargaining agreement with Air Products, which provides that "in the event that a grievance is not settled satisfactorily by the grievance procedure, the question may be submitted to arbitration . . . ." J.A. at 60. Air Products, however, refused to arbitrate. Thereafter, the Union commenced the within litigation, and it seeks to enforce Air Products to arbitrate its grievance.

The collective bargaining agreement at issue herein was entered into on or about February 12, 1998 between Air Products and the Union in order to "further the mutual interests of both the Company and its employees." J.A. at 9. The Agreement states that the parties agree to "provide a peaceful method of adjusting differences which may arise between the parties" and to "provide for the operation of the Calvert City, Kentucky Chemical Plant of Air Products and Chemicals, Inc. . . ." J.A. at 10. The Agreement specifically covers:

all hourly rated production and maintenance employees, including operational employees, warehousers, electricians, painters, bagger operators, storekeepers, utility persons and janitors of the "Chemical Plant" of

Air Products and Chemicals, Inc. at Calvert City, Kentucky . . . .

J.A. at 11.

Article XXII of the Agreement sets forth specific guidelines with respect to the seniority of its employees. "Plant Seniority" is the "right of preference" to lay-offs, recalls to work, and "filling job vacancies where there are no experienced personnel bidding for the posted job." J.A. at 21. Contained within this section is a list of the various "operating departments" which may be available to such members, including vinyl acetate, acetylenics, polyvinyl alcohol, utilities, emulsion, spray dryer, "and any other operating plant which may be added during the life of this contract." J.A. at 24, 25. Following an outline of qualifications for hiring, transferring, and promoting in each of the job classifications, the Agreement delineates various requirements concerning the filling of job vacancies "in all departments." J.A. at 32. Specifically, Paragraph 14 of this section of the Agreement, entitled "New Operating Plant Opening," provides, in pertinent part, as follows:

Job openings in a new operating plant will be filled by plantwide bidding for a period of one (1) year from date of the posting of the first job opening . . . .

J.A. at 39, 40.

Air Products maintains that the collective bargaining agreement is limited to operations at the Chemical Plant and there is no provision extending its terms to any other facility operated by Air Products. In support of its contention, it refers to the stated purpose of the Agreement outlined above: "to provide for the operation of the Calvert City, Kentucky Chemical Plant of Air Products and Chemicals, Inc." J.A. at 10. In addition, it states that the issue at hand is a "representational issue," specifically whether the Union's representation should be extended to the new Power Plant, and that issue is under the exclusive jurisdiction of the NLRB

indistinguishable." *Id.* Thus, we held that where the Board's resolution of non-contractual issues could also resolve the controversial breach of contract claims brought under § 301, the federal courts should decline to exercise jurisdiction over the contractual allegations. 870 F.2d at 1089 (citing *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Facetglas, Inc.* 845 F.2d 1250 (4th Cir.1988)(finding that where NLRB's resolution of representational issues would also resolve contractual issues, the court declined to exercise jurisdiction over the contractual claim)).

*Olympic Plating*, however, is distinguishable from the instant case. In *Olympic Plating*, the International union alleged that Olympic breached the collective bargaining agreement by recognizing the local union as the bargaining representative of Olympic's employees. We determined, in *Olympic Plating*, that the underlying dispute--the resolution of which union is the proper bargaining representative of the company's employees-- was primarily representational, and simply referring to the claim as a "breach of contract" was insufficient for purposes of § 301 federal courts' jurisdiction. The instant case, however, does not involve a determination of which union should represent Air Products' employees; there are no competing unions. Rather, the question is whether Air Products' Chemical Plant employees, undeniably governed by the existing collective bargaining agreement, are entitled to jobs at the new Power Plant. Even if this matter does implicate a collateral representational issue, the matter is, first and foremost, a genuine Section 301 contract dispute, and it is not so "essentially representational" as to preclude Section 301 jurisdiction.

Moreover, unlike in *Olympic Plating*, in this case, there is no charge pending before the Board. In *Olympic Plating*, this Court specifically noted that both proceedings--the one in federal court and the one before the Board--involved essentially the same claims, and one decision would necessarily answer both claims. Hence, they were "meaningfully indistinguishable." 870 F.2d at 1089. In the

have a "right of preference" to fill "job vacancies where there are no experienced personnel bidding for the posted job." J.A. at 21. Article XXII of the Agreement, entitled "Seniority," states that various "operating departments" which may be available to such members, include "any other operating plant which may be added during the life of this contract." J.A. at 24, 25. Furthermore, the Agreement states that "[j]ob openings in a new operating plant will be filled by plantwide bidding for a period of one (1) year from the date of the posting of the first job opening." J.A. at 39, 40. Therefore, the question becomes: Is the new plant an "operating department," a "new operating plant," or is it "any other operating plant which may be added during the life of this contract"? In order to answer such questions, it is necessary to interpret the pertinent provisions of the Agreement. Thus, this dispute is a matter of contract interpretation. And in accordance with the decisions of the United States Supreme Court in *Carey* and the decision of this Circuit in *Dow*, this Court has jurisdiction to compel arbitration of such a matter.

The crux of Air Products' argument is that the underlying dispute involves a representational issue which is under the exclusive jurisdiction of the NLRB. In support of its position, Air Products refers to *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Olympic Plating Industries, Inc.*, 870 F.2d 1085 (6th Cir.1989), in which this Court recognized a "strong policy in favor of using the procedures vested in the Board for representational determinations in order to promote industrial peace." 870 F.2d at 1089 (citation omitted). In *Olympic Plating*, the International union filed an action against the employer, claiming "breach of contract." The International also filed an action with the Board against the employer and the local union for "unfair labor practice." This Circuit determined that regardless of how the "breach of contract claim" was characterized, the claims before the court and the Board were "virtually identical" and the underlying substance of the two claims were "meaningfully

and is not subject to arbitration. The Union, however, contends that Article XXII of the Agreement, as stated above, allows for an arbitrator to decide if the new cogeneration "Power Plant" is an "operational department," is part of "Utilities," or is "any other operating plant which may be added during the life of this contract." J.A. at 102.

On July 7, 2000, the District Court entered a Memorandum Opinion granting Defendant Air Products' Motion for Summary Judgment. In its Opinion, the District Court wrote as follows:

> The main issue before this court is whether the Company is required to submit to arbitration a grievance regarding whether Air Products Chemical Plant employees have seniority rights at a new, separate Air Products Power Plant. An obligation to arbitrate a labor dispute does not arise solely by operation of law. *Litton Fin. Printing Div. v. National Labor Relations Bd.*, 501 U.S. 190, 200 (1991). A party is compelled to submit its grievance to arbitration only if it has contracted to do so. *Id*. "[A]rbitration is a matter of consent, and...it will not be imposed upon parties beyond the scope of their agreement." *Id*. at 201, 111 S.Ct. at 2222. "[T]he court's role is limited to deciding if the party seeking arbitration is making a claim which on its face is governed by the contract." *General Drivers, Salesmen, and Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc.*, 23 F.3d 1039 (6th Cir.1994)(citations omitted).

J.A. at 64, 65.

In stating that the Union's "breach of contract claim raises issues of representation," the District Court concluded that the Union "cannot avoid the NLRB's exclusive jurisdiction by characterizing what is essentially a representation issue as a breach of contract issue." Thus, as the District Court held, the

within dispute "involves statutory interpretation within the exclusive jurisdiction of the NLRB." *Id.*

Following the District Court's Memorandum Opinion, Plaintiff Union filed a Motion for Reconsideration, which was denied. In its Memorandum Opinion and Order of October 5, 2000, denying Plaintiff's Motion, the District Court held as follows:

> The facts indicate that while this dispute may involve issues of contract interpretation, it is essentially an argument over whether [the Union's] contract covers the employees at the new Air Products Power Plant, i.e. whether it represents those employees. "In such cases where the [NLRB's] resolution of non-contractual [representational] issues could also resolve the controversial breach of contract claims brought under § 301, the federal courts should decline to exercise jurisdiction over the contractual allegations." *International Brotherhood of Boilermakers, Iron Ship builders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Olympic Plating Industries, Inc.*, 870 F.2d 1085, 1089 (6th Cir.1989).

J.A. at 136.

On October 25, 2000, the Union filed the within Appeal. The Union appeals the District Court's Order granting Defendant Air Products' Motion for Summary Judgment. It also appeals the District Court's Order denying its Motion for Reconsideration.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 449 (6th Cir.1999). Summary Judgment is appropriate if the evidence, viewed in the light most favorable to the non-

properly assignable to within the contractually recognized bargaining unit." 459 F.2d at 225. In observing the decision reached by the Supreme Court in *Carey, supra*, this Court concluded in *Dow* that regardless of the dispute considered-- whether one involving work assignment (as stated above) or one concerning representation--"we see no barrier to the use of the arbitration procedure" because "[i]f it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board. If it is a representation matter, resort to arbitration may have a pervasive, curative effect...." *Dow*, 459 F.2d at 225 (quoting *Carey v. Westinghouse Elec. Corp.*, 375 U.S. at 272). We, therefore, affirmed the decision of the district court, in *Dow*, to order the submission of grievances to arbitration in accordance with the parties' collective bargaining agreement.

In the case at hand, Union members who were employed at the Chemical Plant operated by Air Products attempted to exercise seniority rights to the new jobs in the Power Plant. When Air Products refused their attempts, the Union filed a grievance stating that Air Products was in violation of the current collective bargaining agreement by refusing to allow unit employees to exercise their seniority rights to the jobs that will be available at the new Power Plant. Air Products, in denying the grievance, stated that the current bargaining unit employees of the Calvert City Chemical Plant had "no contractual rights to the jobs" at the new plant.

The dispute which underlies the grievance filed by the Union concerns whether the current Union members of the Chemical Plant have seniority for the new jobs at the Power Plant --whether those members have any rights to the work at the new plant. It is a question of work assignment. In order to determine whether the current bargaining unit senior employees have any "contractual rights" to the jobs at the new plant, one must look to the contract--the collective bargaining agreement in existence between Air Products and the Union. The Agreement provides that members with "plant seniority"

bargaining agreement with respect to seniority determination and application as well as improper work assignment. The Union filed an action in district court pursuant to Section 301 of the LMRA. Dow Corning contended that (1) the arbitration agreement of the parties specifically excluded the grievances from submission to arbitration because certain procedural prerequisites had not been followed; and (2) the underlying grievances, which amounted to allegations of unfair labor practices and/or representation issues, are within the jurisdiction of the NLRB, and therefore, the court should have stayed its decision to compel arbitration. *Dow*, 459 F.2d at 222-23.

With respect to Dow Corning's contention concerning the NLRB's jurisdiction to hear disputes underlying the grievances, we determined that the fact that the alleged contract violations may also be unfair labor practices within the exclusive jurisdiction of the NLRB does not deprive the court of jurisdiction over the Union's Section 301 action. 459 F.2d at 224. This is true whether the dispute concerns unfair labor practices or lawsuits to compel arbitration of grievances such as pay rates and hours of work. *Id*. at 224-25. The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract "is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301 . . . . The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301 has thus not survived." *Dow*, 459 F.2d at 224-25 (quoting *Smith v. Evening News Ass'n*, 371 U.S. 195, 199-200 (1962)). We, therefore, concluded that it would be inappropriate to withhold enforcement of the arbitration agreement. 459 F.2d at 225.

Dow Corning contended also that one of the grievances concerned a representational dispute which is within the NLRB's jurisdiction. In this respect, the Complaint stated that the particular grievance "protests the defendant's performance of work at its Midland Corporate Center

movant, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.P. 56(c); *see also Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996). *See Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 799 (6th Cir.1996).

### B. Analysis

The District Court determined that the Union's breach of contract claim raises issues of representation because the Union claims that the scope of the collective bargaining agreement extends to the Power Plant, which is operated by Air Products and is adjacent to the Chemical Plant, and the Union is "asserting itself as the collective bargaining agent of the employees at the separate facility." J.A. at 65. Having determined that the crux of the matter is "essentially a representation issue" which is characterized as a breach of contract issue, the District Court concluded that the parties' dispute is within the exclusive jurisdiction of the NLRB.

Upon review, however, we conclude that the District court improperly granted summary judgment in favor of the Defendant, Air Products. This case is a matter primarily of contract interpretation, while potentially implicating representational issues. Pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), and in accordance with the law in this Circuit, we find that federal courts may have jurisdiction to examine alleged violations of agreements. Moreover, we find that the particular contract at issue, the collective bargaining agreement between the Union and Air Products, on its face, provides for arbitration of the matter outlined in the Union's grievance. Thus, where neither the Union nor Air Products has sought to invoke the powers of the NLRB, and the disputed issue is of a contractual nature, a federal court may properly exercise its jurisdiction over the matter.

*1.  Jurisdiction*

Section 301(a) of the Labor Management Relations Act ("LMRA") vests federal courts with jurisdiction to examine alleged violations of contracts between certain employers and labor organizations.  Section 301 states, in pertinent part, as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

28 U.S.C. § 185(a).  The United States Supreme Court has held that Section 301 does more than confer jurisdiction; it "expresses a federal policy that federal courts should enforce [such] agreements...and that industrial peace can be best obtained only in that way." *Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448 (1957).

Moreover, the Supreme Court has held that even if the contract dispute involves a representational question, and "even though an alternative remedy before the Board . . . is available," under Section 301(a) of the LMRA, federal courts have jurisdiction to enforce an arbitration clause. *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 268 (1964).  Thus, in some instances, Section 301 can provide parties to a labor contract with an independent forum for resolution of representational or contractual issues, in addition to NLRB disposition.  Specifically, the Supreme Court in *Carey* held that where there was a dispute between an employer and two unions as to whether certain employees in one union were doing the work of employees in another union, a suit either in federal courts, pursuant to the LMRA, or before authorized

state tribunals, is proper notwithstanding the availability of an alternative remedy before the NLRB.  375 U.S. 261.

*Carey* concerned a "jurisdictional" dispute involving two unions and an employer, wherein the dispute could be one of two different, though related, matters: work assignment or representation.  375 U.S. at 263.  The Supreme Court acknowledges that classifying the dispute can be difficult, occurring where one party believes the matter is essentially a representational one and the other party characterizes it as a work assignment or contractual issue; and in some cases, the issues are intertwined. *Carey*, 375 U.S. at 269-70.  The Court determined, though, that however the dispute is considered-- whether work assignment or representation--"we see no barrier to use of the arbitration procedure."  375 U.S. at 272.  The Court continued:

> If it is a work assignment dispute, arbitration conveniently fills a gap and avoids the necessity of a strike to bring the matter to the Board.  If it is a representation matter, resort to arbitration may have a pervasive, curative effect even though one union is not a party . . . .  By allowing the dispute to go to arbitration its fragmentation is avoided to a substantial extent; and those conciliatory measures which Congress deemed vital to "industrial peace" [citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448] and which may be dispositive of the entire dispute, are encouraged.  The superior authority of the Board may be invoked at any time.

*Id.*

This Court considered a similar issue to the case at hand in *Local 12934 of International Union, District 50, United Mine Workers of America v. Dow Corning Corp.*, 459 F.2d 221 (6th Cir.1972).  In *Dow*, the Union demanded arbitration of certain grievances filed against the employer, Dow Corning.  The grievances included alleged violations of the collective